Terry NEELY *v.* STATE of Arkansas

CA CR 82-147                           647 S.W.2d 473

Court of Appeals of Arkansas
Opinion delivered March 2, 1983

*Porter & King,* by: *Durwood W. King,* for appellant.

*Steve Clark,* Atty. Gen., by: *Theodore Holder,* Asst. Atty. Gen., for appellee.

DONALD L. CORBIN, Judge. On May 8, 1978, appellant, Terry Neely, entered a plea of guilty to two counts of burglary, class B felonies, and two counts of theft of property, class C felonies. He received a sentence of twenty years on each burglary count with fifteen years of each twenty-year sentence suspended on good behavior. He received a sentence of five years on each of the theft of property counts. Each of the sentences was to run concurrently with credit for time served while awaiting trial dating from March 3, 1978.

The prosecuting attorney filed a petition to revoke these suspended sentences and a hearing was held on March 22, 1982. An order was entered by the trial court revoking the sentences on March 24 and appellant was ordered to be delivered to the Arkansas Department of Corrections to remain for the balance of the fifteen years previously suspended less the time between the date appellant was paroled and the date the revocation of sentences occurred.

For reversal, appellant contends the trial court erred in revoking his suspended sentence on the basis that the state had failed to produce any proof that appellant had any knowledge of the conditions of suspension or probation. He argues that since Ark. Stat. Ann. § 41-1203 (4) (Repl. 1977) requires a court to provide a defendant with a written statement explicitly setting forth the conditions under which he is being released, the admitted failure to do so in this instance mandates reversal. The state conceded that appellant was orally told at the revocation hearing that the suspended portions of his sentence were being suspended "during his good behavior."

Appellant further contends that *Ross* v. *State,* 268 Ark. 189, 594 S.W.2d 852 (1980) is controlling. There the Arkansas Supreme Court stated the following:

Moreover, our holding in *Gerard, supra,* preceded the adoption by the General Assembly of a requirement of written conditions in connection with suspended sentences. In light of this current legislative expression, all conditions for a suspended sentence, including any requirement of good behavior, must be in writing if the suspended sentence is to be revocable. Therefore, courts have no power to imply and subsequently revoke conditions which were not expressly communicated in writing to a defendant as a condition of his suspended sentence. This result not only comports with any due process requirements owed to a defendant upon the imposition of a suspended sentence but may serve to deter criminal conduct which a defendant might otherwise commit but for a full appreciation of the extent of his jeopardy.

The State contends that good behavior is an implied condition of every suspension and need not be expressed in writing since a person should be presumed to know that his suspended sentence is contingent upon his refraining from criminal conduct. We understand and are sympathetic with appellee's argument, but we have no choice but to agree with appellant and follow precedent. Any change in the interpretation or construction of Ark. Stat. Ann. § 41-1203 (4) (Repl. 1977) must come from legislative action or from the Arkansas Supreme Court.

We recognize the value of having written conditions to avoid misunderstandings by the probationers; however, we have great difficulty in reaching the conclusion that a probationer could misunderstand that a suspended sentence on good behavior requires that he not commit a felony (in the instant case, burglary and theft of property offenses).

We reverse.

MAYFIELD, C.J., and CRACRAFT, J., concur. COOPER, J., joins in Judge CRACRAFT's concurrence.

GLAZE, J., dissents.

MELVIN MAYFIELD, Chief Judge, concurring. I believe any problem with the decision in this case results from an Act of the General Assembly and if a change is needed, it should be made by the General Assembly.

GEORGE K. CRACRAFT, Judge, concurring. In considering the merits of this appeal I have carefully and critically analyzed the decision in *Ross* v. *State,* 268 Ark. 189, 594 S.W.2d 852 (1980) in a vain attempt to find a distinction or other reason why it should not be controlling. I have been unable to do so. It holds exactly what the majority opinion says it does and we are firmly bound by it even though this suspended sentence was imposed before *Ross* was decided.

I have found it difficult to believe that the Supreme Court intended to extend the requirement of Ark. Stat. Ann. § 41-1203 (4) (Repl. 1977) as far as its opinion seems to go or, if it did, that the Legislature in its enactment actually had the intention ascribed to it in that opinion.

I had no difficulty in accepting such a rule applicable to restrictions on non-felonious conduct. It is certainly a reasonable requirement that a probated felon be informed of the type of non-criminal conduct which might result in revocation. It is reasonable to assume that he might not know that his failure to pay a fine or make restitution within a given time might result in imprisonment. It is a sensible assumption that he might not otherwise know that he must refrain from frequenting unlawful or designated places or consorting with designated persons who might adversely influence his future conduct. Some of the restrictions on non-criminal conduct which a court may impose as a condition of his suspension are set out in the Act and cover over three-quarters of a page. Basic fairness dictates that these restrictions, intended to assist him in leading a law-abiding life, be given in writing (1) to assure that he fully understands the condition of his probation and (2) as a means of refreshing his memory from time to time. Without such a memorandum and explanation of it he might easily forget or misinterpret one or more of his many restrictions and be dealt with unfairly.

My concern is that we are here compelled by *Ross* to reverse the revocation of a suspended sentence imposed on a person convicted for several felonies simply because he was not informed in writing what everyone already knows — that he must not commit another one. Nor am I able to relate such a rule to any notions of due process, fair play and deterrences as was further reasoned by *Ross*. He would certainly not have been permitted to interpose as a defense to his initial convictions that he had never been informed in writing that he would go to jail if he committed burglary and theft. It is as incongruous to me that he be permitted to interpose that defense in a revocation hearing.

This case, in which the suspension was imposed before *Ross* was published, is not unique in that respect. There must be many other such suspended or probated sentences still in effect. The required retroactive application of *Ross* to these cases has, and will for some time to come, cause this legislation, intended to prevent injustice to an accused, to result in an unnecessary and unjust burden on the public and the orderly administration of justice. It would be my sincere hope that the legislature would take the needed action to correct this.

I reluctantly concur in the result, and am authorized to state that COOPER, J., joins in this concurrence.

TOM GLAZE, Judge, dissenting. No member on this Court agrees that the rule announced in *Ross* v. *State,* 268 Ark. 189, 594 S.W.2d 852 (1980), is correct. The reason for my disgruntlement with the rule in *Ross* is eloquently stated in the concurring opinion of my colleague, Judge Cracraft. Although this Court is in no position to overrule *Ross* v. *State,* it certainly could refuse to follow the case, thereby inviting the Supreme Court to review the rule it set out in *Ross.* The approach taken by the majority court in following the *Ross* rule gives us no assurance that the rule will be reviewed any time soon. I believe that this Court should express its honest opinion that the rule in *Ross* is wrong and then permit the Supreme Court to reverse *Ross* or restate its affirmance of the rule.

I would affirm.